

FILED

DEC - 4 2018
DEC-04-2018
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

**VIVEK SHAH, pro se,**
      Petitioner,

v.

**1:18-cv-7990**
**Judge Gary Feinerman**
**Magistrate Judge Jeffrey Cole**
**PC 10**

**RICHARD HART, Director of Salvation Army Freedom Center, Pathway Forward,**
      Respondent.

### BRIEF IN SUPPORT OF PETITION FOR A WRIT OF HABEAS CORPUS

#### Nature of Proceedings

1. On August 10, 2012, I was arrested for the charges of 18 U.S.C. §§ 875(b) & 876(b) [Threatening Communications with intent to extort, and Mailing Threatening Communications with intent to extort], inter alia. I have been continuously incarcerated since then.

2. I am currently at a federal halfway house in Chicago, IL with a projected release date of February 4, 2019, followed by 3 years of supervised release. My address is 825 N. Christiana Ave., Chicago, IL 60651.

3. On September 11, 2013 I was sentenced to 87 months' imprisonment, after pleading guilty pursuant to a Plea Agreement, in violation of §§ 875(b) & 876(b).

4. On June 10, 2015 I filed a § 2255 Motion in the Southern District of West Virginia, Beckley Division. On July 26, 2016 the § 2255 Motion was denied as untimely. An appeal has been made to the Fourth Circuit and a decision is still pending.

5. The director of the halfway house is Richard Hart, whose address is 825 N. Christiana Ave., Chicago, IL 60651. As such, this court has jurisdiction to hear this petition.

<u>Showing of Innocence</u>

The essential facts of my criminal case are contained in the Stipulation of Facts attached to the Plea Agreement, a copy of which is attached in the <u>Exhibit</u> section of this petition. Basically, I was a struggling actor in Hollywood. I thought that publicity would help my acting career. I created a hoax. I mailed creative-looking letters entitled Extortion Notice to several prominent individuals, including movie producers, leaving behind bread crumbs that have the appearance of evasion – a pretty cheap hoax (both figuratively and literally). It's pretty much common sense that since it is a hoax, I could not have had the "intent to extort," right? Well, my counsel made me believe that it didn't matter, as long as I made those demands in a letter, especially titled Extortion Notice, I was guilty. I couldn't believe that my counsel had told me that just by me mailing those letters I had the intention of extorting money from those individuals. I ended up pleading guilty to something that wasn't a crime.

Look at page 2 of the Stipulation of Facts:

1. FACT: "Mr. Shah mailed each of the above-described letters with the intent to extort money from the person to whom the letter was addressed."
2. **FACT: "Mr. Shah also intent to obtain publicity that he hoped would further his acting career."**

Because I did not believe my counsel and the AUSA, I wanted some sort of acknowledgement from the government that I am guilty despite of it being a hoax. The result was FACT #2 stated above. So when the judge asked me if I intended to extort money from those individuals, I said that "I created the perception" that they were being extorted (I filed a Motion for Certified Copies of Documents, requesting transcripts of the Plea Hearing; however, the district court

2

denied it, and I do not have any way to obtain a transcript to show to this Court). The judge didn't feel comfortable with my response, so she asked me again whether I had the intent to extort. Confused, I asked the judge if I could ask my counsel. The judge allowed that. To the best of my recollection, my conversation went like this:

> Me: What do I say?
> Counsel: Just say yes.
> Me: What about it being a hoax?
> Counsel: Then state that sentence from the Stipulation of Facts about publicity.
> Me: Okay.

So then I told the judge that I had the intent to extort money, and that I also intended to obtain publicity that I hoped would further my acting career. Then judge also asked me how much money I demanded, to which I responded with the figures as well as stating that I had promised in the Extortion Notice letters to return the money demanded with a 4% APR. The judge accepted the factual basis and my plea of guilty.

At that time I didn't know what the all that meant in legal terms; however, after thousands of hours of legal research in the prison's law library, I do now. Importantly, and the legal basis under which I am entitled to habeas relief due to a change in law, is the Fourth Circuit's January 7, 2016 decision in United States v. White, 810 F.3d 212 (4th Cir. 2016), in which the Court held that § 875(b) is a specific intent crime and that the intent to extort "is the intent to procure something of value." Id at 223. In turn, "[a] specific-intent requires not simply

> the general intent to do the immediate act with no particular, clear, or undifferentiated end in mind, but the additional deliberate and conscious purpose or design of accomplishing a very specific and remote result; mere knowledge that a result is substantially certain to follow from one's actions is not the same as the specific intent or desire to achieve that result. Oxygene v. Lynch, 813 F.3d 541, 549 (4th Cir. 2016) (internal quotation marks and emphasis omitted).

3

With this understanding of the law, the legal murkiness pretty much vanishes. My counsel made me plead guilty to a general-intent crime. And FACTS #1 & 2 from before? Well, FACT #2 actually **NEGATES** a specific intent to procure something of value.

In <u>Carter v. United States</u>, 530 U.S. 255, 268 (2000) the Supreme Court used an example to help distinguish between general and specific intent:

> [A] person entered a bank and took money from a teller at gunpoint, but deliberately failed to make a quick getaway from the bank in the hope of being arrested so that he would be returned to prison and treated from alcoholism. Though this defendant knowingly engaged in the acts of using force and taking money (satisfying "general intent"), he did not intend permanently to deprive the bank of its possession of the money (failing to satisfy "specific intent"). Id (citing <u>United States v. Lewis</u>, 688 F.2d 1276, 1279 (10th Cir. 1980)).

Like the <u>Lewis</u> example that the Supreme Court used, I acted in the "hope" to further my acting career. Implicit in the intent to obtain publicity is also the intent to be caught, or arrested, so that the publicity would further my acting career. There is no contrary argument since without intended to be caught, there would be no publicity in the first place, and therefore no furtherance of my acting career in the second place. Of course, if the purpose was to obtain publicity, then it cannot be to obtain money was well. That would be illogical, in fact insane – what, obtain money, go to prison for up to two decades, and then have an acting career: what career?

Although the record does not provide this Court with any further facts as to how I intended to obtain publicity that would help further my acting career, the conclusive fact is nevertheless that I sent the letters thinking, believing, hoping, and intending that I would somehow obtain publicity which would help further my career as an actor.

The admission, both in the Stipulation of Facts and at the plea colloquy, of having the "intent to extort" amounted to nothing more than a general intent and not a specific intent to

extort. I stated quite clearly to the district court that I created a perception that the victims were being extorted. I also stated quite clearly that it was my intent to cause publicity by having mailed the letters so that the publicity would then further my acting career.

Specific intent is "the intent to accomplish the precise criminal act that one is later charged with," whereas general intent is "the intent to perform an act even though the actor does not desire the consequences that result." Oxygene at 547-48. At most, the admission that I intended to extort money could be considered an intention to make the bodily movement of writing the demand and threat letter and transmitting it in interstate commerce. In grammatical terms, the word "extort" is a transitive verb, a type of action verb which tells what the subject does. Thus the facts remain that I intended the actions and not the consequences. The word "obtain" (as in obtain publicity) reflects a desire – a term synonymous with "procure." As such, it could not have been my conscious object to procure money or that I even hoped to make any financial gain from the victims. I neither desired not believed that I would obtain money. I even promised to return the money with a 4% APR if money was ever to be transmitted (although the real reason why I even stated such an absurd promise was because it was part of the hoax).

Since it would make absolutely no sense that a person would want to obtain publicity to help *further* his acting career without purposefully and consciously desiring that result (and not to further a prison career), it is clear that I did not have the specific intent to extort money.

### § 2255 is Inadequate of Ineffective

"Every court that has addressed the matter has held that § 2255 is 'inadequate or ineffective' only when a structural problem in § 2255 forecloses even one round of effective collateral review-and then only when as in Davenport the claim being foreclosed is one of actual innocence." Taylor v. Gilkey, 314 F.3d 832, 835 (7th Cir.2002). The Seventh Circuit's test for

5

determining the inadequacy or ineffectiveness of § 2255 was established in In re Davenport, 147 F.3d 605 (7th Cir. 1998). In the wake of Davenport, "[the Seventh Circuit] distilled that holding into a three-part test: a petitioner who seeks to invoke the savings clause of § 2255(e) in order to proceed under § 2241 must establish: (1) that he relies on 'not a constitutional case, but a statutory-interpretation case, so [that he] could not have invoked it by means of a second or successive section 2255 motion,' (2) that the new rule applies retroactively to cases on collateral review and could not have been invoked in his earlier proceeding, and (3) that the error is 'grave enough ... to be deemed a miscarriage of justice corrigible therefore in a habeas corpus proceeding,' such as one resulting in 'a conviction for a crime of which he was innocent.'" Montana v. Cross, 829 F.3d 775, 783 (7th Cir. 2016) (quoting Brown v. Rios, 696 F.3d 638, 640 (7th Cir. 2012).

I am relying exclusive on the Fourth Circuit's January 7, 2016 decision in United States v. White, 810 F.3d 212 (4th Cir. 2016), in which the Court held that § 875(b) is (1) a specific intent crime and that (2) the intent to extort "is the intent to procure something of value." Id at 223. Neither the district court that convicted me nor had the Fourth Circuit previously held those two interpretations of the law before. Pursuant to Schriro v. Summerlin, 542 U.S. 348 (2004), the new statutory interpretation of the law is retroactively application on collateral review. This interpretation could not have been invoked in an earlier § 2255 motion since the time to file a § 2255 motion expired on September 27, 2014, whereas White was decided 1 ½ years after the last date that I could have filed a § 2255 motion. The error is indeed grave enough to constitute a complete miscarriage as I have shown my actual and factual innocence in this petition.

For further support to show that § 2255 is inadequate of ineffective, in Garza v. Lappin, 253 F.3d 918 (7th Cir.2001), the Seventh Circuit held that an intervening decision of an

international tribunal (i.e. the Inter-American Commission on Human Rights) was enough to bring a habeas petition under § 2255's savings clause since Garza would have never had an opportunity to raise a challenge to the legality of his sentence pursuant the newly-issued report by the international tribunal.

Since the "'change in law' is not to be equated to a difference between the law in the circuit in which the prisoner was sentenced and the law in the circuit in which he is incarcerated," <u>Davenport</u> at 612, I have used the law of the Fourth Circuit instead of the Seventh Circuit's in this petition to show my innocence.

## Conclusion

For the foregoing reasons I pray that this Court grant this habeas petition and vacate my conviction and sentence.

Respectfully submitted,

_____  11/27/18
Vivek Shah
825 N. Christiana Ave.
Chicago, IL 60651

## Verification of Facts

I declare under the penalty of perjury that the facts contained in this Brief are true and correct. Executed on November 27, 2018

_____
VIVEK SHAH

7

# EXHIBIT "A"

Case 5:13-cr-00127 Document 9 Filed 05/09/13 Page 9 of 10 PageID #: 40

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY

UNITED STATES OF AMERICA

v.      CRIMINAL NO. 5:12-cr-00172

VIVEK SHAH

## STIPULATION OF FACTS

The United States and Vivek Shah stipulate and agree that the facts comprising the offenses of conviction in Count Two of the Superseding Indictment in Criminal No. 5:12-00172, and in Counts One through Seven of the Indictment in Criminal No. 5:13-00127, include the following:

Beginning around June 9, 2012, and continuing through around August 9, 2012, Mr. Shah mailed a series of letters to persons known to the United States Attorney. Each of these letters was entitled "Extortion Notice" and contained an express threat of death to a member of the recipient's family unless the recipient paid a sum of money. In order to carry out this extortion scheme, Mr. Shah used false identities and aliases to purchase and activate various prepaid access device cards. Mr. Shah then used those prepaid access device cards to purchase via the Internet postage from the United States Postal Service (USPS), and used the postage purchased thereby to mail these letters. Mr. Shah also sent several of the recipients of his letters follow-up letters containing a copy of the original letter to that recipient along with wiring instructions for an offshore account into which he intended for them to transfer the money demanded.

In the course of this scheme, Mr. Shah:

1. on or about June 9, 2012, mailed from California to Connecticut a letter addressed to a victim with the initials H.W., communicating an express threat of death to a member of H.W.'s family unless H.W. paid $4 million;

2. on or about June 14, 2012, mailed from California to Florida a letter addressed to a victim with the initials C.C., communicating an express threat of death to a member of C.C.'s family unless C.C. paid $13 million;

3. on or about June 26, 2012, mailed from California to Florida a letter addressed to a victim with the initials T.P., communicating an express threat of death to a member of T.P.'s family unless T.P. paid $34 million;

4. on or about July 9, 2012, mailed from California to Illinois a letter addressed to a victim with the initials E.L., communicating an express threat of death to a member of E.L.'s family unless E.L. paid $16 million;

5. on or about July 9, 2012, mailed from California to Texas a letter addressed to a victim with the initials D.A., communicating an express threat of death to a member of E.L.'s family unless E.L. paid $35 million;

PLEA AGREEMENT EXHIBIT A

BOP00011

6. on or about July 9, 2012, mailed from California to Florida a letter addressed to the aforementioned T.P., which contained a copy of the letter Mr. Shah mailed to T.P. on or about June 26, 2012, along with wiring instructions for a foreign-currency exchange account set up at an offshore bank in T.P.'s name without T.P.'s knowledge;

7. on or about August 9, 2012, mailed from Illinois to California a letter addressed to a victim with the initials G.G., communicating an express threat of death to a member of G.G.'s family unless G.G. paid $9,600,000; and

8. on or about August 9, 2012, mailed from Illinois to California a letter addressed to a victim with the initials R.K., communicating an express threat of death to a member of R.K.'s family unless R.K. paid $11,300,000.

Mr. Shah mailed each of the above-described letters via the USPS, depositing each of them in an authorized depository for mail matter and causing each to be delivered by the USPS. Mr. Shah mailed each of the above-described letters with the intent to extort money from the person to whom the letter was addressed. Mr. Shah also intended to obtain publicity that he hoped would further his acting career. By mailing the above-described letter to C.C., Mr. Shah attempted to and did affect interstate commerce in the Southern District of West Virginia by extortion.

In planning and carrying out the acts described in this Stipulation of Facts, Mr. Shah did not conspire with any other person. No person aided or abetted Mr. Shah in carrying out these acts, nor did any person act as an accessory after the fact with respect to these acts.

This Stipulation of Facts does not contain each and every fact known to Mr. Shah and to the United States concerning the acts charged in the above-listed Indictments, and is set forth for the limited purpose of establishing a factual basis for Mr. Shah's guilty plea.

Stipulated and agreed to:

_____       5/9/13
VIVEK SHAH       Date
Defendant

_____       5/9/13
DEBRA A. KILGORE       Date
Counsel for Defendant

_____       5/9/13
STEVEN R. RUBY       Date
Assistant United States Attorney

2

BOP00012